The judgment of the court (Eustis, C. J. being absent,) was pronounced by
Preston, J.
The plaintiff has enjoined the defendants and sheriff from selling five hundred shares of the capital stock of the Mechanics and Traders’ Bank of New Orleans, and five shares of the New Orleans Insurance Company, by virtue of an execution issued against E. B. Harris on a judgment for a large amount obtained by the Bank of Mobile against him.
The plaintiff alleges that he bought the stock from E. B. Harris on the 21st of May, 1849, and produces a bill of sale and receipt for the price from E. B. Harris to that effect, and denies that the defendants ever seized the stock. The defendants allege that they made a valid seizure of the stock on the 3d of January, 1849.
The stocks were pledged by E. B. Harris to the Louisiana State Bank to secure the payment of a loan of twenty thousand dollars to E. B. Harris. The plaintiff contends, that as a part of the price of the stocks he paid this loan, took a subrogation to the rights of the Louisiana State Bank, and is entitled, under the prayer for general relief, to have refunded to him the amount he paid in discharge of the pledge, even if the seizure by the defendants was valid.
The argument of the defendant’s counsel, with the facts established by evidence, has satisfied us that the Bank of Mobile, on the 3d of January, 1849, made a valid seizure of the stocks in controversy.
*539 The shares in the corporations were the property to be seized, being an undivided interest in their funds and assets. The officers of the corporations were the keepers and possessors of this undivided property for each and all the stockholders. The certificates of stock were the evidence of the ownership of that property in the hands of the holders, as the subscription and transfer books were the evidence of the ownership in the possession of the corporations ; and the shares of the defendant, 23. B. Harris, incorporeal rights in the funds and assets of the corporations in the possession of their officers. Civil Code, 466.
The 647th article of the Code of Practice authorized the seizure of these rights. They might have been seized by taking possession of the certificates, as we infer from article 2457 of the code, which declares that the tradition of incorporeal rights takes place by the delivery of the titles. But they might also be seized in the same manner as the share in a private partnership, under article 2794 of the code, by seizing the interest of the partner in the assets and notifying the firm. We think, therefore, that it was a valid seizure of the plaintiff’s stocks for the sheriff to declare to the cashier or keeper of the funds and assets of the corporations, that by virtue of the execution in his hands, he seized the undivided interest of the defendant in the funds and assets of the corporations, or, what was the same thing, his shares of stock. This the sheriff did, and left a copy of the notice in the hands of the cashier of the bank, and secretary of the insurance company, and requested them to enter the seizures on the transfer books of the corporations.
The counsel of the plaintiff contends, that this was not a valid seizure of the stocks, because the sheriff did not take into his possession the certificates of the stocks then pledged to the Louisiana State Bank for a loan, and in possession of that corporation. In support of his argument, he cites the case of Gobet v. The New Orleans and Nashville Railroad Company. In that case, the court decided no more than that the sheriff could not seize the proceeds of the sale of slaves before they were sold. The proceeds could not be seized, because they did not exist. He cites, also, the cases of Simpson v. Allain, Fluker v. Bullard, and Taylor v. Stone. In the first, it was decided that a twelve months’ bond, and in the two last, that promissory notes could not be validly seized for the purpose of sale under execution, unless the sheriff obtained actual possession of the property, or that tangible property could not be seized and sold without taking it into possession, and delivering it to the vendee. These decisions do not conflict with the principle, that an incorporeal right may be seized by notifying the person or corporation in possession of the subject of the right. The inability to seize the corporeal evidence of the right does not prevent the creditor from seizing the right itself, by notifying the keeper of the subject matter of the right.
If the evidence of the right be negotiable, and is acquired without notice by an endorsee, even after the seizure of the right, the seizure is ineffectual as to him: a principle adopted in favor of commerce. But if the evidence of the right be not negotiable, the seizure of the debt or right, of which it is the evidence, by notification to the debtor or keeper of the subject of the right, is valid against the subsequent assignee of the debt or right.
The certificates of the stocks in controversy were not negotiable, and could not be sold or transferred to the prejudice of the previous seizure of the stocks themselves. We conclude, therefore, that their seizure by the sheriff, on the 3d of January, 1849, under the execution of the Bank of Mobile, was a valid seizure.
*540 This case presents two other important questions, which have been fully argued by counsel. The defendants allege “ that the sale of the stocks was not real but simulated, for the mere purpose of evading the seizure made by the defendants’ execution; that John L. Harris, the brother of JS. B. Harris, combined with him to withdraw the property, by pretended sales, without any consideration.” They further deny that the plaintiff obtained either a legal or conventional subrogation to the rights of the Louisiana State Bank upon the stocks.
The district judge did not decide upon either of these subjects in consequence of coming to the conclusion that the defendants’ seizure was void; and we have not the advantage of his opinion upon the questions to wl&ch they give rise. Nevertheless, we have kept the case under advisement an unusual length of time, and reviewed the evidence with great care, in the hopes of coming to a satisfactory result ourselves, but have been unable to do so.
Indeed, it appears that a suit was commenced by the defendants in another court, to annul the sale from .E. B. Harris to John L. Harris, on the charge of simulation, and that it was pending when the present case was tried. If the plea of another suit pending for the same cause of action had been made, the present suit could not have been tried, as to the simulation, until the first suit was disposed of. We should be much pleased if we could have the opinion of a jury on the question of simulation before the final disposition of this controversy. It might be easily obtained by submitting the first case to a trial by jury. But whatever course the parties may choose to pursue, we feel that justice requires us to remand the cause for another trial, in order to obtain the opinion of the courts of original jurisdiction on the remaining questions, and perhaps for fuller and more satisfactory evidence than the record now presents.
It is therefore decreed, that the judgment of the district court be reversed, and that the case be remanded for further proceedings according to law ; the plaintiff and appellee paying the costs of this appeal.